UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| RECOVERY CHAPEL, a Missouri nonprofit, FARRIS ROBERTSON, <br><br>   Plaintiffs, <br><br> v. <br><br> CITY OF SPRINGFIELD, MISSOURI, a political subdivision of the State of Missouri, and the SPRINGFIELD BOARD OF ADJUSTMENT, a political subdivision of the State of Missouri, <br><br>   Defendant. | Case No. 6:14-CV-03289-REL |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs, Recovery Chapel and Farris Robertson ("Chaplain Robertson"), seek the entry of a preliminary injunction prohibiting Defendants, the City of Springfield ("the City") and the Springfield Board of Adjustment ("the BOA"), from taking any steps to prevent occupancy by the current residents of the property located at 1809 E. Crestview, Springfield, Missouri based on failure to obtain a Certificate of Occupancy or other occupancy permit. Plaintiffs are currently operating the property as a group home for persons with substance abuse and alcoholism disabilities in accordance with the City Zoning Ordinance.[1] The City's Director of Building Development Services has refused to grant Plaintiffs an occupancy permit, and the BOA refused to reverse the decision on appeal. Plaintiffs have exhausted their administrative remedies, and

---

[1] The City has adopted via Springfield City Code Section 36.91 a land development code, consisting, in part, of Article I of the City's Land Development Code. The Springfield Zoning Ordinance is hereinafter referred to as the "City Zoning Ordinance."

the decision of the BOA denying the occupancy permit will become enforceable by the City after July 3, 2014.

For the reasons set forth below, Plaintiffs are entitled to a preliminary injunction because: (1) Plaintiffs are likely to prevail on the merits; (2) Plaintiffs will suffer irreparable harm if Defendants are not enjoined; (3) the harm the injunction will spare Plaintiffs substantially outweighs the harm, if any, it would cause Defendants; and (4) the injunction will further the public interest. *See Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

## STATEMENT OF FACTS

On August 30, 2013, Plaintiff Chaplain Robertson bought the property at 1809 E. Crestview for use by Plaintiff Recovery Chapel as a residential group home. *Robertson Aff.* ¶ 9. Plaintiff Recovery Chapel is a Missouri nonprofit organization dedicated to providing long-term recovery support services for men who have a history of substance use disorders. *Robertson Aff.* ¶ 4. It operates residential facilities designed to support abstinence, pro-social life skills, and employment preparation. *Id.* Recovery Chapel is not a transitions project, treatment center, detoxification center, or homeless shelter. *Robertson Aff.* ¶ 6. It is not now licensed, nor has it ever been licensed by the State of Missouri, as any sort of Correctional Facility or to provide any sort of probation, parole, or correctional transition services at 1809 E. Crestview. *Robertson Aff.* ¶ 7. The property is in a Single Family Residential (R-SF) District. *Robertson Aff.* ¶ 9. Chaplain Robertson invested significant funds to purchase the property, and he and Recovery Chapel have invested significant funds to make the property habitable and suitable for use as a residential group home. *Robertson Aff.* ¶ 10. In order to qualify for services and remain on the property, residents must be clean and sober, and they must be productive in recovery. *Robertson Aff.* ¶ 8.

2

On November 1, 2013, Recovery Chapel began moving residents into the property at 1809 E. Crestview. *Robertson Aff.* ¶ 11. Shortly thereafter, Chaplain Robertson received a notice that a citizen complaint had been made regarding the number of persons occupying the premises. *Robertson Aff.* ¶ 12. In response, Chaplain Robertson reached out to the City's Land Use Inspector to inform her the property was being used as a residential group home for persons with disabilities. *Robertson Aff.* ¶ 13. On January 28, 2014, the City notified Chaplain Robertson that the property located at 1809 E. Crestview violated a city code. *Robertson Aff.* ¶ 14. The next day, Chaplain Robertson sent an email requesting a meeting with representatives of the City to discuss the matter. *Id.* On February 5, Chaplain Robertson met with City Attorney Duke McDonald. *Robertson Aff.* ¶ 15. At the meeting, Duke McDonald stated his opinion that fourteen persons would be permitted at 1809 E. Crestview. *Id.* After the meeting, Chaplain Robertson applied for a Certificate of Occupancy to use the property as a residential group home. *Id.* On February 10, however, Duke McDonald sent an email to Chaplain Robertson reversing his earlier statement that the property would be suitable for fourteen persons and stating instead that federal law permitted the city to limit group home to eight persons. *Robertson Aff.* ¶ 16.

On February 25, 2014, the City's Director of Building Development Services, Chris Straw, contacted Chaplain Robertson for additional information about the property at 1809 E. Crestview. *Robertson Aff.* ¶ 17. After Chaplain Robertson responded with the requested information, the City Council passed a bill, placing a 180-day moratorium on processing actions related to certain group homes at its March 10, 2014 meeting *Robertson Aff.* ¶ 18. At the City Council meeting, Ralph Rognstad, Director of Planning and Development, along with City Councilmembers, identified that the proposal was in response to the City's dealing with Plaintiffs regarding the property at 1809 E. Crestview. *Id.* On March 14, Mr. Shaw sent Chaplain

3

Robertson a letter denying the requested occupancy permit to use the property as a group home. *Robertson Aff.* ¶ 19. As justification, Mr. Shaw stated, "the City's historical interpretation has been that more than one person on probation and/or parole removes a residence from a 'group home' classification to a 'community corrections facility' classification." *Id.*

On March 18, 2014, Chaplain Robertson sent a letter to Mr. Straw requesting that the City "provide a reasonable accommodation at the subject address for every recovering alcoholic or addict living there, or who will live there, from the City's rules, policies and practices including zoning codes, land use requirements, and other municipal ordinances that might hinder this property from being used for said reasonable accommodations." *Robertson Aff.* ¶ 20. The City denied the request. *Id.* On March 20, a City Councilman and representatives for the City police department attended a meeting held by residents of the neighborhood surrounding 1809 E. Crestview to address the property and its operation as a group home. *Robertson Aff.* ¶ 21.

On April 11, 2014, Chaplain Robertson appealed the determination made by the City denying the occupancy permit for the property to operate as a group home to the BOA. *Robertson Aff.* ¶ 22. As the basis of his appeal, Chaplain Robertson stated:

1) The property located at 1809 Crestview does not meet the definition of a community corrections facility.

2) As a group home for persons with disabilities, the property should be permitted to house up to 12 individuals with disabilities, plus a staff member, as a reasonable accommodation under the Fair Housing Act. This accommodation does not present a direct threat.

*Id.; Compl.* ¶ 40; Exhibit A. At the hearing for the appeal, community members spoke in opposition to the project, but no community member was able to identify a specific complaint involving any of the residents at the property. *Robertson Aff.* ¶ 23. Additionally, representatives for the City admitted at the hearing that "the proposed use does not completely meet the definition of a Community Correctional Facility." *Robertson Aff.* ¶ 24. The Chair of the BOA,

4

Matt Cologna, stated his opinion that the proposed use was best classified as a "Transitional Service Shelter," and three of the five members of the BOA voted for the property to be classified as such. *Robertson Aff.* ¶ 25. However, short of four votes, the BOA was unable to mandate any course of action, and the original decision of the Building Development Services Director to deny the occupancy permit and classify the use as a Community Correctional Facility remains in effect. *Robertson Aff.* ¶ 26.

There are currently eight individuals with substance abuse or alcoholism disabilities, along with two Recovery Chapel staff members, residing in the property at 1809 E. Crestview. *Robertson Aff.* ¶ 30. The Defendants' denial of the occupancy permit and failure to make a reasonable accommodation will not only interrupt the medical treatment of eight men, but will also constructively evict all ten residents of the property. *Robertson Aff.* ¶ 31. By leaving the eight residents in recovery without proper services to facilitate sobriety and displacing them from their home, the Defendants' actions have a substantial likelihood of leading to homelessness. *Robertson Aff.* ¶ 32

## ARGUMENT

"The primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." *Kansas City S. Trans. Co., Inc. v. Teamsters Local Union #41*, 126 F.3d 1059, 166-67 (8th Cir. 1997) (quoting *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984)). This Court has the authority to grant preliminary injunctive relief for under 42 U.S.C. Section 3613(c)(1), 42 U.S.C. Section 12131, and Section 89.110, RSMo.

It is appropriate to grant a preliminary injunction where the movant can establish: (1) a likelihood of success on the merits of the movant's claims; (2) the threat of irreparable harm; (3)

that the threat of harm to the movant outweighs the harm, if any to the defendants; and (4) that the injunction would not be adverse to the public interest. *Dataphase*, 640 F.2d at 113. No single factor is dispositive, and the likelihood of success on the merits "must be examined in the context of the relative injuries to the parties and the public." *Id.* "Where the movant has raised a substantial question and the equities [i.e. the relative chances of injury for both parties] are otherwise strongly in his favor, the showing of success on the merits can be less." *Id.* In this case, each factor favors Plaintiffs, and the equities are strongly in their favor.

### A. *Plaintiffs are likely to succeed on the merits of their claim.*

The evidence contained herein will establish that Plaintiffs have a substantial likelihood of prevailing on their claims. Prevailing on this factor does not require a mathematical probability of success. *Dataphase*, 640 F.2d at 113. The Court need only find that the moving party has support for its position under the governing law. *Baker Elec. Co-op, Inc. v. Chaske*, 28 F.3d 1466, 1473-74 (8th Cir. 1994). Plaintiffs have a substantial likelihood of succeeding on all of their claims. However, a finding that they have a likelihood of success on any claim alone will be sufficient to satisfy the requirement that Plaintiffs show that they are likely to succeed on the merits.

The decision by the City and the BOA to deny Plaintiffs an occupancy permit to operate the property at 1809 E. Crestview as a residential group home for persons with disabilities was contrary to the plain language of the City's own zoning code and in violation of the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA"). The FHA defines "handicap" as: "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h). Under the ADA, the term "disability" means "(A) a

6

physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102. Courts have routinely interpreted "handicap" and "disability" to include alcoholism and substance abuse under both the FHA and the ADA. *See, e.g., Oxford House-C v. City of St. Louis*, 843 F. Supp. 1556, 1572 (E.D. Mo. 1994) ("It is clear that the residents…are recovering alcoholics and addicts, and are therefore persons with handicaps within the meaning of 42 U.S.C. §§ 3602(h), 3604."); *Tsombanidis v. City of W. Haven*, 180 F. Supp. 2d 262, 283 (D. Conn. 2001).

The Defendants have also violated the law in other ways (e.g. refusing to permit additional occupants as a reasonable accommodation, enforcing a moratorium on group homes, enforcing a restrictive minimum space requirement for group homes, etc.). As the purpose of a preliminary injunction is to preserve the status quo, this motion is limited to the question of whether the current residents of the property at 1809 E. Crestview (consisting of eight persons with substance abuse and alcoholism disabilities in recovery and two staff members) should be permitted to continue to reside at that property during the pendency of this litigation.

1. *Defendants' decision to deny an occupancy permit to operate the Plaintiffs' property as a group home is contrary to the plain meaning of the Springfield Zoning Ordinance.*

Recovery Chapel currently has eight persons with substance abuse and alcoholism disabilities residing at 1809 E. Crestview, along with two staff persons. *Robertson Aff.* ¶ 30. The City Zoning Ordinance expressly permits this use of property in a Single Family Residential District. City Zoning Ord. §§ 2-1100, 5-2502. The City defines a residential group home as a "single-family-detached dwelling in which no more than ten (10) people reside, comprised of the following: eight or fewer unrelated mentally or physically handicapped persons, no more than two persons acting as houseparents or guardians who need not be related to each other or to any

7

of the mentally or physically handicapped persons, residing in the dwelling." City Zoning Ord. § 2-1100.

Instead of applying this zoning code as written, the City and the BOA have instead attempted to force other, ill-fitting definitions on the property in order to be able to deny the Plaintiffs' request for an occupancy permit. In his March 14, 2014 letter denying Plaintiff's request for an occupancy permit, Building Development Services Director Chris Straw based his decision on the idea that having "more than one person on probation and/or parole removes a residence from a 'group home' classification to a 'community correctional facility' classification." *Robertson Aff.* ¶ 19. This statement is entirely inconsistent with the definition of "Community Correctional Facility" in the City Zoning Ordinance.

The term "community correctional facility" is defined by Section 2-1100 of the City Zoning Ordinance. Under that definition, a "community correctional facility" must be *"licensed by the State of Missouri* for the housing, supervision, counseling, rehabilitation, and job training for individuals in need of care necessary to return them to a productive role in society" (emphasis added). City Zoning Ord. § 2-1100. The property at 1809 E. Crestview is not currently, and has not previously been, licensed by the State of Missouri. *Robertson Aff.* ¶ 7. Accordingly, it cannot be a community correctional facility under the City Zoning Ordinance.

Even if the City ignores the requirement that a community correctional facility be licensed by the State of Missouri, the use of the property at 1809 E. Crestview does not fit the definition of a community correctional facility. The Plaintiffs' property is not a transitions project, treatment, or detoxification center, nor does it seek to rehabilitate criminal offenders. *Robertson Aff.* ¶ 6. While some persons with disabilities supported by Recovery Chapel may also have criminal offenses, these offenses are collateral to their disabilities. Rather than

8

structuring their services to address the problems associated with transition from incarceration, Recovery Chapel addresses substance use disorders. *Robertson Aff.* ¶ 4. At the BOA hearing, even representatives for the City agreed that the proposed use does not completely meet the definition of a "Community Correctional Facility." *Robertson Aff.* ¶ 24.

It is also plainly contrary to the City Zoning Ordinance to classify the property at 1809 E. Crestview as a "Transitional Service Shelter. At the BOA hearing, three members of the BOA voted to define the use of the property as such. *Robertson Aff.* ¶ 25. This definition, however, cannot apply to group homes, because the City Zoning Ordinance expressly defines "Shelter" to exclude group homes. City Zoning Ord. § 2-1100.

The property located at 1809 E. Crestview is a single-family detached dwelling. Ten people reside at the property, consisting of eight disabled persons and two persons acting as guardians. The City and the BOA have produced no evidence to dispute these facts, and these facts describe precisely the use defined as a "Group Home, Residential" in the City Zoning Ordinance. The Defendants' continued and repeated attempts to classify the use of the property as *anything but* the use plainly described by the City Zoning Ordinance's definition of a group home is arbitrary and capricious, is an abuse of discretion, and denies the Plaintiffs due process and equal protection. Accordingly, Plaintiffs have demonstrated a likelihood of success on the merits of their claim for judicial review under state law.

2. *Defendants' decision to deny occupancy to Plaintiffs violates the FHA and the ADA.*

By denying Plaintiffs' requests to use the property at 1809 E. Crestview as a group home for persons with disabilities, Defendants made housing unavailable on the basis of disability in violation of 42 U.S.C. Section 3604(f)(1) (FHA), interfered with the exercise or enjoyment of rights granted or protected by the FHA in violation of 42 U.S.C. Section 3617, and excluded individuals with disabilities from the services, programs, or activities of a public entity in

9

violation of 42 U.S.C. Section 12132 (Title II of the ADA). In addition, their decision to apply a maximum number of persons on parole or probation solely to groups homes for persons with disabilities imposes different terms, conditions, or privilege in housing on the basis of disability in violation of 42 U.S.C. Section 3604(f)(2).

To show that a municipality made housing unavailable, a plaintiff may show either differential treatment or differential effects. *Oxford House-C v. City of St. Louis*, 843 F. Supp. 1556, 1575 (1994) (citing *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 933 (2d Cir. 1988) and *United States v. City of Black Jack*, 508 F.2d 1179, 1185 (1974)). One way for Plaintiffs to prevail on their claim for differential treatments is to demonstrate that Defendants acted with discriminatory intent when they denied Plaintiffs' request for an occupancy permit. *Martin v. Constance*, 843 F. Supp. 1321 (E.D.Mo. 1994). "A plaintiff's evidence of discriminatory intent need not show that the handicapped status of the intended inhabitants was the sole factor of the defendant's decision . . . only that it was a motivating factor." *Id.* at 1325 (citing *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252 (1977)). To reach this determination, "[t]he Court must conduct a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.*

Intentional discrimination can include actions motivated by stereotypes, unfounded fears, misperceptions, and "archaic attitudes," as well as simple prejudice about people with disabilities. *See School Board of Nassau County v. Arline*, 480 U.S. 273, 279 (1987). To show intentional discrimination it is not necessary that Plaintiffs prove that Defendants' actions were motivated by a malicious desire to discriminate; it is enough that the actions were motivated by or based on consideration of the protected status itself. *See Stewart B. McKinney Foundation v. Town Plan and Zoning Commission*, 790 F.Supp. 1197, 1210-11 (D. Conn. 1992).

10

The Defendants' decision to deny the Plaintiffs an occupancy permit was motivated by the fact that the residents at the property have substance abuse and alcoholism disabilities. At the BOA hearing, community members voiced their opposition to the project for various reasons. *Robertson Aff.* ¶ 23. However, no community member was able to identify a specific complaint involving any of the residents. *Id.* Residents of the neighborhood surrounding 1809 E. Crestview also organized a community meeting, attended by a City Councilman and representatives for the City police department, to address the property and its operation as a group home. *Robertson Aff.* ¶ 21. Instead of taking the opportunity to address any potential misconceptions about disabilities, the City Council effectively endorsed the biases of the residents by placing a 180-day moratorium on group homes. *Robertson Aff.* ¶ 18. This type of adverse governmental action in response to community bias is evidence of discriminatory intent. *Cmty. Servs. v. Heidelberg Twp.*, 439 F. Supp. 2d 380 (M.D. Pa. 2006).

Additionally, when Mr. Shaw denied Plaintiffs' occupancy permit, he based the determination on the City's "historical interpretation" of the City classifying properties that would otherwise be group homes as community corrections facilities when more than one resident is on probation and/or parole. *Robertson Aff.* ¶ 19. This policy is not supported anywhere in the City Zoning Ordinance, and even at the hearing before the BOA, representatives for the City admitted "the proposed use does not completely meet the definition of a Community Correctional Facility." *Robertson Aff.* ¶ 24. Furthermore, at the hearing before BOA, three members of the BOA voted to identify the property as a Transitional Service Shelter, despite the fact that the City Zoning Ordinance's definition of a "shelter" explicitly excludes group homes from the definition. *Robertson Aff.* ¶ 25. Where there is no evidence of a legitimate motive, there is circumstantial and indirect evidence of an illegitimate motive.

11

Even if the City's policy transforming a group home with more than one person on probation or parole into a community correctional facility were contained in the City Zoning Ordinance, such a policy would be discriminatory on its face. The City cannot apply a more stringent requirement for persons with disabilities in a group home than for the population at large. There is no general policy, codified or otherwise, that restricts occupancy in a single family home if more than one resident is a probationer, parolee, or sex offender. Accordingly, the Defendants cannot restrict occupancy in group homes on those grounds.

As an alternative to providing direct evidence of discriminatory intent, Plaintiffs can show discrimination under the FHA by applying the burden-shifting analysis outlined *McDonnell Douglas Corp. v. Green*, 411 U.S. 792(1973). *See Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004). Under the burden-shifting analysis as applied in the Eighth Circuit, Plaintiffs must first make a *prima facie* showing that the challenged ordinance has a discriminatory effect. *Familystyle of St. Paul, Inc. v. City of St. Paul*, 923 F.2d 91, 94 (8th Cir.1991). "If the law has such an effect, the burden shifts to the governmental defendant to demonstrate that its conduct was necessary to promote a governmental interest commensurate with the level of scrutiny afforded the class of people affected by the law under the equal protection clause." *Id.* at 94. The court in *Familystyle* concluded that handicapped persons are not members of a suspect class, and therefore held that the proper level of scrutiny is whether the legislation is "rationally related to a legitimate government purpose." *Id.*

Applying the analysis to this case, it is clear that there Plaintiffs have made their *prima facie* case. Plaintiffs are associated with persons with disabilities and provide support to them through their residential facilities. *Robertson Aff.* ¶¶ 4-5. By categorizing a residence for support of persons with disabilities containing more than one person on parole or probation as a

12

"community correctional facility," Defendants limit the overall housing available for persons with disabilities. In addition, closing the property at 1809 E. Crestview will have an adverse impact on the persons with disabilities currently residing there. The only potential legitimate purpose offered by the City is a desire to reduce the concentration of criminality in community. That legitimate goal, though, is not rationally related to the City's decision because the City's policy applies *only* to persons with disabilities in group homes. Accordingly, Defendants' actions violate the FHA.

Furthermore, Defendants' decision to deny the occupancy permit based on the disabilities of the residents violates the ADA. Under the Act, a "public entity" includes "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A)-(B); 28 C.F.R. § 35.104. The administration of zoning laws is a "service, program, or activity" within the meaning of Title II of the ADA. *Start v. Baltimore Cnty.*, 295 F. Supp. 2d 569 (D. Md. 2003); *Discovery House v. Consolidated City of Indianapolis*, 43 F. Supp. 2d 997 (N.D. Ind. 1999) (holding that a zoning decision was a "service" for purposes of the ADA). By refusing to apply the City Zoning Ordinance as written and denying Plaintiffs the ability to use 1809 E. Crestview as a group home, Defendants excluded Plaintiffs from proper administration of zoning laws on the basis of the residents' disabilities. *See Innovative Health Systems v. City of White Plains*, 117 F.3d 37 (2d Cir. 1997) (finding that plaintiffs stated cognizable claims under the ADA when a zoning decision based on clients' disabilities excluded them from the benefits of a public service).

3. *Defendants have failed to make reasonable accommodations and/or modifications under the FHA and the ADA.*

The FHA makes it unlawful to "fail or refuse to make reasonable accommodations in rules, policies, practices, or services when such accommodations may have been necessary to

13

afford persons with disabilities an equal opportunity to use a dwelling." 42 U.S.C. § 3604(f)(3)(B). Similarly, the ADA makes it illegal to fail to make a reasonable modification in policies and procedures to avoid discrimination against persons with disabilities. 42 U.S.C. § 12131(2).

Assuming, *arguendo*, that the City Zoning Ordinance prohibit the eight individuals with substance abuse disabilities from residing together at 1809 E. Crestview, Plaintiffs are entitled to an alteration in this policy as a reasonable accommodation and/or modification. To prevail on a reasonable accommodation claim under the FHA, a plaintiff must show: "(1) he or an associate of his is handicapped within the meaning of Section 3602(a) and the defendant knew or should have known of this fact; (2) an accommodation may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (3) such accommodation is reasonable; and (4) the defendant refused to make the requested accommodation." *Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt., Inc.*, 3:09-CV-58, 2011 WL 1231320, at *7 (D.N.D. Mar. 30, 2011) (citing *Astralis Condominium Ass'n v. Sec'y, U.S. Dept. of Hous. & Urban Dev.*, 620 F.3d 62, 67 (1st Cir. 2010); *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006)). In evaluating reasonable modification claims under the ADA, courts look to whether the request changes the essential nature of the service or imposes an undue burden on the service. *Easley by Easley v. Snider*, 36 F.3d 297, 305 (3d Cir. 1994).

The residents of the property at 1809 E. Crestview are persons with substance abuse and alcoholism disabilities and therefore are persons with "handicap[s]" as defined by the FHA, 42 U.S.C. Section 3602(h), or "disabilit[ies]" under the ADA, 42 U.S.C. Section 12102. On multiple occasions, Defendants were made aware of the residents' status, including:

14

- On or about November 11, 2013 when Plaintiff Chaplain Robertson informed City's Land Use Inspector the property was being used as a residential group home for persons with disabilities;
- On January 29, 2014 when Chaplain Robertson sent an email to City Attorney requesting a meeting to discuss the issue, on February 5 when Chaplain Robertson met with the City Attorney and other representatives of the city; and
- Upon the City's receipt of Plaintiffs' application for an occupancy permit submitted February 5.

*Robertson Aff.* ¶¶ 12, 14-15. The City's failure to grant a reasonable accommodation/modification constructively evicts the residents with disabilities currently residing at the property. Thus, the refusal denies the residents with disabilities the equal opportunity to use a dwelling.

Requesting that the City allow the property to operate as a group home is reasonable. This request maintains the status quo and imposes little, if any, burden upon the City. *See Judy B. v. Borough of Tioga*, 889 D. Supp. 792, 799 (finding plaintiffs' request under the FHA to begin reconstruction and repairs and move residents with disabilities into a group home to be "an extremely modest accommodation"). Neither does allowing the residents to remain at the property hinder zoning enforcement in any way other than the specific accommodation for the property in question. Thus, when the Defendants denied the Plaintiffs' reasonable accommodation and/or modification requests, they violated the FHA. *See Martin*, 843 F. Supp. 1321 (holding refusal to grant an accommodation that would not impose undue financial burden upon defendants and would not undermine the purpose behind zoning enforcement violated the FHA).

### B. Plaintiffs will suffer irreparable harm if forced to close their group home for persons with disabilities.

Once the decision of the BOA to deny an occupancy permit to Plaintiffs' property becomes final, the City will be able to take action to close the property. This would effectively evict the current residents of the property, including eight individuals with substance abuse and alcoholism disabilities in recovery and two staff members. Furthermore, by interrupting the treatment of the men currently in recovery at the property, closing the property would substantially increase the likelihood that they will relapse into substance abuse. "If denying an injunction results in eviction, then the irreparable harm element is likely met." *Hruby v. Larsen*, 2005 WL 1540130, at *4 (D. Minn. June 30, 2005) (citing *Higbee v. Starr*, 698 F.2d 945, 947 (8th Cir. 1983)). Moreover, a district court can presume irreparable harm when a plaintiff shows a likelihood of success. *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 789 (8th Cir. 2004).

### C. The Balance of Hardships Favors Injunctive Relief.

In analyzing the balance of harms, it is appropriate to consider the relative injuries to the parties and the public, and whether the risk of irreparable harm to the movant if relief is denied outweighs the likely injury to the respondent if relief is granted. *Dataphase*, 640 F.2d at 113. Illusory harms do not outweigh actual harms. *See e.g. Branstad v. Glickman*, 118 F.Supp. 925, 943 (N.D. Iowa 2000); *Interbake Foods, L.L.C. v. Tomasiello*, 461 F.Supp.2d 943, 946-47(N.D. Iowa 2006); *Wachovia Securities, L.L.C. v. Stanton*, 571 F.Supp.2d 1014, 1047(N.D. Iowa 2008). Plaintiffs face considerable hardship if Defendants force them to close their group home. They will be able to provide services to fewer persons with disabilities, and they will be unable to recoup their costs in purchasing the property and restoring it for use as a group home. As a nonprofit with a small operating budget, being forced to pay mortgage and other expenses for a property that is not in use would present a substantial hardship.

16

Defendants, by contrast, would not be appreciably burdened by allowing the property to continue to be operated as a group home during the pendency of this case. The Plaintiffs have been operating 1809 E. Crestview as a group home since November 2013, and yet, at the BOA hearing, not a single neighbor was able to identify any specific complaint involving any of the residents of the property. *Robertson Aff.* ¶ 23. Further, because the FHA expressly provides for injunctive relief to prevent discriminatory violations, Congress has already balanced the equities and has determined that injunction should issue where respondent has engaged in or is about to engage in prohibited activity. *See Glenwood Bridge v. City of Minneapolis*, 940 F.2d 367, 371-72 (8th Cir. 1991). Accordingly, the balance weighs heavily in Plaintiffs' favor.

### D. Granting Injunctive Relief Furthers the Public Interest.

Preserving the status quo through preliminary injunctive relief favors the public interest. *See Hruby v. Larsen*, 2005 WL 1540130, *5 (D.Minn. 2005) (public interest favors protecting people who are threatened from eviction for potentially unlawful reasons). In addition, the Supreme Court has recognized that ending discrimination is "a policy that Congress considered to be of the highest priority." *Trafficante v. Metropolitan Life Ins. Co.*, 409 US 205 (1972). Entering an injunction will promote independent living by persons with a disabilities and avoid interruption in their recovery.

## CONCLUSION

Plaintiffs are likely to prevail on the merits of this action and will suffer irreparable harm if Defendants are not enjoined from taking steps to close the group home at 1809 E. Crestview. Defendants will face negligible harm if the motion is granted, and injunctive relief will serve the public interest. As a result, Plaintiffs respectfully requests that the Court enter an order preliminarily enjoining Defendants, and all those in privity with them, from taking steps to

17

Case 6:14-cv-03289-DGK   Document 6   Filed 07/02/14   Page 17 of 18

enforce their decision denying Plaintiffs an occupancy permit pending the final outcome in this matter.

Dated: July 1, 2014

>Respectfully submitted,
>THE MONTGOMERY LAW FIRM, LLC
>By: /s/ M. Scott Montgomery
>M. Scott Montgomery (Mo. Bar 42805)
>2808 S. Ingram Mill Road
>Building A104
>Springfield, Missouri 65804
>Telephone: (417) 889-4766
>Facsimile: (417) 889-4792
>Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2014 I electronically filed the foregoing, which was served through CM/ECF on all attorneys of record. In addition, I served the foregoing by electronic mail to Ms. Marianne Landers Banks, attorney for Defendants, at MBanks@springfieldmo.gov.

>/s/ M. Scott Montgomery