UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| RECOVERY CHAPEL, a Missouri nonprofit, FARRIS ROBERTSON, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SPRINGFIELD, MISSOURI, a political subdivision of the State of Missouri, and the SPRINGFIELD BOARD OF ADJUSTMENT, a political subdivision of the State of Missouri, <br><br> Defendant. | Case No. 6:14-CV-03289-REL |

## AFFIDAVIT OF FARRIS ROBERTSON

I, **Farris Robertson**, being duly sworn upon my oath, under penalty of perjury, and competent to make this Affidavit state as follows:

1. My name is Farris Robertson. I am over 18 years of age, of sound mind, and competent to make this Affidavit. The facts stated herein are true and correct and are based upon my personal knowledge.

2. I am the owner of the property located at 1809 E. Crestview ("Crestview") in the City of Springfield, Missouri ("the City"). I am also the Executive Director of Recovery Chapel, a Missouri non-profit corporation.

3. Recovery Chapel, which was founded in 2004, is dedicated to the mission of providing supportive housing for individuals with substance abuse and alcoholism disabilities.

4. Recovery Chapel provides long-term recovery support services to adults who have a debilitating history of substance use disorders. Our residential facilities are designed to support abstinence, pro-social life skills and employment preparation. Recovery Chapel operates a total of three group homes, including the property located on Crestview.

5. Every participant in the Recovery Chapel residential housing program is a recovering alcoholic and/or substance abuser, and as such, is disabled within the meaning of the Fair Housing Act Amendments, 42 U.S.C. 3601, *et seq.*, and the American's with Disabilities Act, 42 U.S.C. 12101, *et seq.*

6. Recovery Chapel is not a transitions project, treatment, detoxification center, or homeless shelter, nor does it seek to rehabilitate criminal offenders.

7. Recovery Chapel is not now licensed, nor has it ever been licensed by the State of Missouri as any sort of Correctional Facility or to provide any sort of probation, parole, or correctional transition services at 1809 E. Crestview.

8. In order to remain in the program, participants must remain clean and sober, and are required to be productive in recovery.

9. I purchased the Crestview property for use by Recovery Chapel as a residential group home on August 30, 2013. The property is in a Single Family Residential (R-SF) District.

10. Recovery Chapel and I have invested significant money into the Crestview property habitable and suitable for use as a residential group home.

11. On November 1, 2013, Recovery Chapel began moving residents into the property at 1809 E. Crestview.

12. On or about November 11, 2013, I received a notice from the City that a citizen complaint had been made regarding the number of persons occupying the premises.

13. In response, I contacted the City's Land Use Inspector to inform her the property was being used as a residential group home for persons with disabilities.

14. On January 28, 2014, the City notified me that the property located at 1809 E. Crestview violated a City code. The next day, I sent an email requesting a meeting with representatives of the City to discuss the matter.

15. On February 5, I met with City Attorney Duke McDonald. At the meeting, Duke McDonald stated his opinion that fourteen persons would be permitted at 1809 E. Crestview. After the meeting, Chaplain Robertson applied for a Certificate of Occupancy to use the property as a residential group home.

16. On February 10, however, Duke McDonald sent me an email reversing his earlier statement that the property would be suitable for fourteen persons and stating instead that federal law permitted the City to limit group home to eight persons.

17. On February 25, 2014, the City's Director of Building Development Services, Chris Straw, contacted Chaplain Robertson for additional information about the property at 1809 E. Crestview.

18. Upon information and belief, the City Council placed a 180-day moratorium on processing actions related to certain group homes at its March 10, 2014 meeting. At the meeting, Ralph Rognstad, Director of Planning and Development, along with some City Councilmembers, identified that the proposal was in response to the City's dealing with us regarding the property at 1809 E. Crestview.

19. On March 14, Mr. Shaw sent me a letter denying the requested occupancy permit to use the property as a group home. As justification, Mr. Shaw stated, "the city's historical

2

interpretation has been that more than one person on probation and/or parole removes a residence from a 'group home' classification to a 'community corrections facility' classification."

20. On March 18, 2014, I sent a letter to Mr. Straw requesting that the City "provide a reasonable accommodation at the subject address for every recovering alcoholic or addict living there, or who will live there, from the City's rules, policies and practices including zoning codes, land use requirements, and other municipal ordinances that might hinder this property from being used for said reasonable accommodations." The City denied the request.

21. Upon information and belief, a City Councilman and representatives for the City police department attended a meeting held on March 20, by residents of the neighborhood surrounding 1809 E. Crestview to address the property and its operation as a group home.

22. On April 11, 2014, I appealed the determination made by the City denying the occupancy permit for the property to operate as a group home. As the basis of my appeal, I stated that the property did not meet the definition of a "community correctional facility," as alleged by the city and that the property should be permitted to house up to 12 persons with disabilities plus staff as a reasonable accommodation.

23. At the hearing for the appeal, community members spoke in opposition to the project, but no community member was able to identify a specific complaint involving any of the residents at the property.

24. Additionally, representatives for the City admitted at the hearing that "the proposed use does not completely meet the definition of a Community Correctional Facility."

25. Chair of the BOA, Matt Cologna, stated his opinion that the proposed use was best classified as a "Transitional Service Shelter," and three of the five members of the BOA voted for the property to be classified as such.

26. However, short of four votes, the BOA was unable to mandate any course of action, and the original decision of the Building Development Services Director to deny the occupancy permit and classify the use as a Community Correctional Facility remains in effect.

27. I lease the Crestview property to Recovery Chapel, at a rate of $850.00 per month. A copy of Recovery Chapel's current rental agreement is attached hereto as **Exhibit 1**, and incorporated by reference herein.

28. Recovery Chapel is funded exclusively through revenue generated through participant fees and grants/donations.

29. In 2013, Recovery Chapel had gross revenues of $196,665.96, and gross expenditures of $196,297.10, for a total profit of $368.86.

30. There are currently eight individuals with substance abuse or alcoholism disabilities, along with two Recovery Chapel staff members, residing in the property at Crestview.

31. I believe the Defendants' denial of the occupancy permit and failure to make a reasonable accommodation will not only interrupt the medical treatment of eight men, but will also constructively evict all ten residents of the property.

32. By leaving the eight residents in recovery without proper services to facilitate sobriety and displacing them from their home, I believe the Defendants' actions have a substantial likelihood of leading to homelessness.

33. Since the City issued its determination that the Crestview property was a "community correctional facility," rather than a group home, on March 24, 2014, Recovery Chapel has had a decrease in its enrollment in its residential program at the Crestview property, and an overall decrease of in enrollments across the board at all of its properties.

34. As a direct and proximate result of the City's actions, Recovery Chapel projects that it will have a budgetary shortfall of $9,420.00 in fiscal year 2014.

35. I will suffer irreparable harm to my interest in the Crestview property if immediate action is not taken.

36. Recovery Chapel will suffer irreparable harm to its interest in the Crestview property if immediate action is not taken.

## VERIFICATION

I, Farris Robertson, having been duly sworn, depose and state that the information stated herein is true, and that those factual matters which are stated upon information and belief are believed to be true.

_Farris Robertson_  Date: 7/1/14

STATE OF MISSOURI  )
                   )  SS
CITY OF SPRINGFIELD )

Subscribed and sworn before me this 1st day of July, 2014.

_Stephanie M. Snyder_
Notary Public

STEPHANIE M. SNYDER
Notary Public, Notary Seal
State of Missouri
Christian County
Commission # 11048650
My Commission Expires May 14, 2015

4