IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| RECOVERY CHAPEL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 6:14-CV-3289-DGK |
| | ) | |
| CITY OF SPRINGFIELD, MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

In this zoning dispute, Plaintiffs Recovery Chapel ("Recovery Chapel") and Farris Robertson ("Robertson") have sued Defendants City of Springfield, Missouri ("the City") and Springfield Board of Adjustment ("BOA") for denying Plaintiffs' property a certificate of occupancy. Plaintiffs believe that Defendants' actions constitute discrimination against them on the basis of disability, which is prohibited under federal law.

Now before the Court are two motions. Plaintiffs move for a preliminary injunction to stop Defendants from preventing Plaintiffs' residents from occupying Plaintiffs' property (Doc. 5). Defendants move to dismiss the Amended Complaint for lack of subject-matter jurisdiction and for failure to state a claim (Doc. 12). For the reasons below, both motions are DENIED.

**Background[1]**

The City's zoning ordinances establish two types of residential use classifications that are relevant here. "Community corrections facilities" are facilities licensed to house, supervise, counsel, and rehabilitate criminal offenders on probation or parole. Springfield, Mo., Zoning

---

[1] The parties predicate their motions on four different Federal Rules of Civil Procedure, each of which requires the district court to view the facts through different lenses. However, the parties materially dispute the facts only as they concern Defendants' Rule 12(b)(6) motion. Accordingly, the Court recites the facts under that standard only, which requires it to take all plausible allegations as true and credit the plaintiff with all reasonable inferences.

Ordinance § 2-1100, *available at* http://mo-springfield.civicplus.com/DocumentCenter/View/5145. "Residential group homes" are dwellings comprising persons with mental or physical handicaps. *Id.* A maximum of eight persons with disabilities and a maximum of two caretakers or guardians may live in a residential group home. *Id.* Residential group homes, but not community corrections facilities, are permitted in Single Family Residential districts. *Id.* § 4-1000.

The BOA is an administrative body that hears appeals of City zoning enforcement decisions and determinations. *Id.* § 3-2103(A). The BOA also hears requests for special exceptions. *Id.* § 3-2103(D).

Robertson is the executive director of Recovery Chapel, a nonprofit corporation based in Missouri. Recovery Chapel operates residential facilities that provide long-term recovery support services for men who have a history of substance abuse disorders. Its operations promote abstinence, pro-social life skills, and employment preparation. Recovery Chapel has never endeavored to provide any sort of probation, parole, or correctional transition services, nor is it licensed to do so.

In 2013, Robertson bought real property ("the Property") in a Single Family Residential district in Springfield for Recovery Chapel to operate a residential group home. Plaintiffs invested money and effort into making the Property suitable for use as a residential group home, and residents began moving into the Property not long after Robertson bought it. Although the Amended Complaint is not clear on the exact number, it appears that fourteen people moved into the Property at this time.

The parties' dispute began in November 2013 when a citizen complained about the number of people living at the Property. Robertson met with a City land use inspector to explain

how the Property was being used. Two months later, the City sent Robertson a letter indicating that the Property's use violated the City's "Dangerous, Blighted, and Nuisance Building Code". The stated reasons were because sex offenders and more than three unrelated persons lived on the Property, and because people were residing on the Property without a certificate of occupancy. *See* Springfield, Mo., Zoning Ordinance § 3-1303(A). Plaintiffs again met with City representatives to discuss how Plaintiffs could use the Property as intended. The City Attorney opined that fourteen residents would indeed be permitted on the Property. After that meeting, Robertson applied for a certificate of occupancy to use the Property as a residential group home. As part of its application review process the City requested, and Robertson provided, additional information.

The City's director of building and development services denied Robertson's application in March 2014. The director wrote, "[T]he City's historical interpretation has been that more than one person on probation and/or parole removes a residence from a 'group home' classification to a 'community corrections facility' classification." (Doc. 4, at 7). Because community corrections facilities are not permitted uses in Single Family Residential districts, this determination required the City to deny the permit application. Robertson responded four days later, requesting that the City "provide a reasonable accommodation at the subject address for every recovering alcoholic or addict living there, or who will live there" from City zoning requirements (*Id.*). The City denied this request.

Robertson then appealed the City's denial of a certificate of occupancy to the BOA. Robertson wrote the BOA that it should reverse the City's denial because the Property does not meet the definition of a community corrections facility. He also stated that allowing up to fourteen individuals with disabilities and staff members would be a reasonable accommodation

3

under the Fair Housing Act. The BOA heard Robertson's appeal, during which time City representatives admitted that "the proposed use does not completely meet the definition of a Community Correctional Facility" (*Id.*, at 8). In June 2014, the BOA allowed the City's original decision and determination to stand.

By that time, the number of Property residents had decreased from fourteen to ten; the Amended Complaint does not allege when this occurred. The ten current inhabitants comprise eight individuals with substance abuse disabilities and two Recovery Chapel staff members.

Plaintiffs then sued Defendants in this Court for violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3631, the Americans with Disabilities Act ("ADA"), *id.* §§ 12101–12213, and illegal zoning determinations under Mo. Rev. Stat. §§ 89.110, 536.100 (Doc. 4).

## Discussion

### I. Plaintiff's failure to seek other administrative remedies does not divest this Court of subject-matter jurisdiction.

Defendants first move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. The first basis for this motion is that Plaintiffs have not exhausted their administrative remedies in failing to seek a variance, rezoning, or a text amendment to the City's zoning ordinance. However, the fact that Plaintiffs failed to petition for a variance, rezoning, or a text amendment relates only to the merits of their FHA claim, specifically whether Plaintiffs requested a reasonable accommodation for a disability. *See Oxford House-C v. City of St. Louis*, 77 F.3d 249, 253 (8th Cir. 1996). This matter does not implicate the Court's ability to hear this case, and is inappropriate for resolution on Rule 12(b)(1) grounds.

The second basis for Defendants' subject-matter jurisdiction attack is their claim that the Court should abstain from hearing the case pursuant to *Younger v. Harris*, 401 U.S. 37 (1971).

*Younger* abstention is appropriate where certain types of parallel state civil proceedings are pending. *Sprint Comm'cns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013). *Younger* is reserved for "exceptional circumstances" that can be found only after considering certain conditions. *Id.* at 591–94 (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 364 (1989) ("*NOPSI*"); *Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). Defendants provide no analysis of *Younger* and do not meaningfully discuss the *NOPSI* categories or any *Middlesex* factors. *See* Fed. R. Civ. P. 7(b)(1)(B) (requiring motions to "state with particularity the grounds for seeking the order"). Moreover, Defendants only cite Eighth Circuit cases that predate *Sprint Communications* even though the Supreme Court in that case explicitly repudiated the Eighth Circuit's approach to *Younger*. 134 S. Ct. at 593. Given the extraordinary nature of *Younger* abstention, the Court declines to make Defendants' *Younger* arguments for them.

The Court DENIES Defendants' motion to dismiss under Rule 12(b)(1).

**II. The Amended Complaint states a claim upon which relief may be granted.**

Defendants next move to dismiss the Amended Complaint on Rule 12(b)(6) grounds. A complaint must meet two conditions to survive a Rule 12(b)(6) motion. First, it must "contain sufficient factual matter, accepted as true, to state a claim to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the complaint need not make detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Second, the complaint must state a claim for relief that is plausible. *Iqbal*, 556 U.S. at 678. A claim is plausible when "the court may draw the reasonable inference that the defendant

5
Case 6:14-cv-03289-SRB   Document 26   Filed 10/02/14   Page 5 of 14

is liable for the misconduct alleged." *Id*. The plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.* In reviewing the complaint, the court construes it liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014).

Defendants move to dismiss Counts I and II, which allege that Defendants violated the FHA and ADA, respectively, by denying Plaintiffs an occupancy permit to use the Property as a group home. Such a denial, Plaintiffs claim, constitutes discrimination on the basis of disability. Defendants argue that Plaintiffs have failed to state a claim on each of these counts because: (1) Plaintiffs are not "aggrieved person[s]" under the FHA; and (2) Plaintiffs did not request a reasonable accommodation to enjoy equal opportunity to use their dwelling, as required for both the FHA and ADA. Each argument lacks merit.

**A. Plaintiffs are covered persons under the FHA.**

The FHA prohibits persons from "discriminat[ing] in the sale or rental, or [] otherwise mak[ing] unavailable or deny[ing,] a dwelling to any buyer or renter because of a handicap of . . . a person residing in or intending to reside in that dwelling." 42 U.S.C. § 3604(f)(1). To assert a cognizable claim for a violation of the FHA, Plaintiffs must be "aggrieved persons", meaning a person who "claims to have been injured by a discriminatory housing practice." *Id.* § 3602(i)(1). Plaintiffs allege that the City's denial of an occupancy permit was a housing practice predicated on disability discrimination. Without an occupancy permit, Plaintiffs cannot make full use of the Property. Plaintiffs thus satisfy this element.

Despite this broad conferral of statutory standing, Defendants claim that the United States Department of Justice and Department of Housing and Urban Development do not extend the benefits of the FHA to sex offenders (Doc. 13, at 9 (citing *Joint Statement of the Department of*

6
Case 6:14-cv-03289-SRB   Document 26   Filed 10/02/14   Page 6 of 14

*Justice and the Department of Housing and Urban Development*, U.S. Dep't of Justice, www.justice.gov/crt/about/hce/final8_1.php (Aug. 18, 1999))). Because some Property residents are registered sex offenders, Defendants argue, those residents cannot assert FHA claims.

This argument fails legally and factually. First, Defendants do not establish that the Joint Statement has the effect of law. For instance, the Joint Statement does not outwardly indicate that it is the product of agency adjudication or rulemaking. Rather, the Joint Statement appears more akin to an interpretative statement lacking the force of law. *See Iowa League of Cities v. Envt'l Prot. Agency*, 711 F.3d 844, 873 (8th Cir. 2013) ("The critical distinction between legislative and interpretative rules is that, whereas interpretative rules simply state what the administrative agency thinks the statute means, and only remind affect parties of existing duties, a legislative rule imposes new rights or duties. . . . It follows from this distinction that interpretative rules do not have the force of law." (internal quotation marks omitted)).

Second, insofar as Defendants correctly interpret the Joint Statement, the Amended Complaint does not allege that sex offenders reside at the Property. The Amended Complaint alleges that the City believed that some Property residents had registered as sex offenders. This allegation does not constitute an admission or allegation by Plaintiffs that sex offenders actually did reside at the Property, but rather suggests that the City wrongfully believed that sex offenders resides there. Accordingly, Defendants' sex offender arguments fail, and Plaintiffs have stated a claim on this prong.[2]

---

[2] Defendants also argue that the FHA excludes parolees and probationers. However, the Amended Complaint does not allege that parolees or probationers reside at the Property, and Defendants' sole case in support is inapposite. *See Reaves v. Wenerowicz*, Civ. No. 12-301, 2012 WL 6209893, at *5 (E.D. Pa. Dec. 13, 2012) (rejecting a claim arising under a subsection of the FHA, 42 U.S.C. § 3604(a), different than the one at issue here).

**B. The Complaint pleads that Plaintiffs requested a reasonable accommodation from Defendants.**

An FHA plaintiff must also plead that he requested a reasonable accommodation that would allow him the equal opportunity to use his dwelling. 42 U.S.C. §§ 3604(f)(1)(B), 3604(f)(3)(B). Similarly, under the ADA, public entities must provide a reasonable accommodation for an individual with a disability. *See, e.g.*, *De Boise v. Taser Int'l Inc.*, 760 F.3d 892, 899 (8th Cir. 2014); 42 U.S.C. § 12132. The parties agree that the FHA and ADA employ an identical standard, so the Court assumes that it does and interprets Defendants' FHA and ADA arguments together. *See Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 924 n.4 (10th Cir. 2012); *see also Developmental Servs. of Neb. v. City of Lincoln*, 504 F. Supp. 2d 714, 723 (D. Neb. 2007) (interchangeably analyzing FHA and ADA cases to determine whether a reasonable accommodation was made). For both these claims, then, a "reasonable accommodation" is one in which the defendants are "given an opportunity to make a final decision with respect to the [p]laintiffs' request, which necessarily includes the ability to conduct a meaningful review of the requested accommodation to determine if such an accommodation is required by law." *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1219 (11th Cir. 2008). Defendants argue that Plaintiffs have not made such a request.

Here, Plaintiffs frequently communicated to Defendants their desire for a reasonable accommodation to use the Property as a residential group home. Robertson told the City that he was using the Property as a residential group home. When the City informed Plaintiffs that boarding fourteen individuals violated the City's blight ordinance, Plaintiffs applied for a certificate of occupancy to properly use the Property as a residential group home. Plaintiffs complied with the City's request for additional information to make the permit decision. After the City denied the permit application, Robertson sent a letter to the City specifically requesting

"a reasonable accommodation" from any City zoning regulations that would prevent Plaintiffs from using the Property as a group home. Robertson then appealed the denial of the permit application to the BOA, specifically noting in his application that he was seeking a reasonable accommodation, and that reversing the City's decision would be a reasonable accommodation on the BOA's part. Plaintiffs made these requests over more than seven months. These allegations establish that Plaintiffs repeatedly and unequivocally asked Defendants to reasonably accommodate their proposed use of the Property, and that Defendants had more than enough time to adequately consider their request. The Amended Complaint thus establishes that Plaintiffs made a request for a reasonable accommodation. *See Schwarz*, 544 F.3d at 1219.

Defendants argue that Plaintiffs' requests are insufficient as a matter of law because Plaintiffs never appealed the adverse BOA decision to the Greene County Circuit Court, as permitted by Mo. Rev. Stat. § 89.110.[3] Defendants argue that this omission is significant, because judicial appeal is an essential component to a request for reasonable accommodation, thus Plaintiffs cannot establish an FHA claim as a matter of law.

Nothing in the FHA, ADA, or Section 89.110 requires Plaintiffs to exhaust their state appellate remedies. In *Oxford House-C v. City of St. Louis*, the Eighth Circuit did hold that the group home plaintiffs in that case "must give the City [of St. Louis] a chance to accommodate them through the City's established procedures for adjusting the zoning code" to succeed on their FHA claim, but had not done so in that case. 77 F.3d at 253. Thus, the group homes had not satisfied the FHA's requirement that they request reasonable accommodations. *Id.*

---

[3] Mo. Rev. Stat. § 89.110 states in pertinent part:

> Any person or persons jointly or severally aggrieved by any decision of the board of adjustment . . . may present to the circuit court of the county or city in which the property affected is located a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality.

9
Case 6:14-cv-03289-SRB   Document 26   Filed 10/02/14   Page 9 of 14

However, *Oxford House-C* is not as broad as Defendants suggest. The group homes in that case did not request *any* accommodation whatsoever from the City of St. Louis. *Id.* at 251. Rather, after the City of St. Louis cited the group homes for housing more persons than the city ordinance allowed, the group homes proceeded straight to federal court. *Id.* Here, Plaintiffs were in constant communication with Defendants and made several requests for reasonable accommodation from them. Although they did not make a request in every manner theoretically possible, such as appealing the BOA decision to a Missouri state court under Section 89.110, Plaintiffs have still made at least *some* request for accommodation.

Further, *Oxford House-C* is distinguishable because Plaintiffs' requests were targeted to redress the perceived FHA violations. The group homes in *Oxford House-C* claimed that the City of St. Louis's FHA violation lay in not making an exception to its zoning code. *Id.* at 253. Thus, the *only* way for the group homes to receive the reasonable accommodation they sought was through administrative changes to land use regulations, an option the group homes never pursued. *See id.* Here, Plaintiffs claim that Defendants have violated the FHA by improperly classifying them as a community corrections facility. Improper residential use classifications may be redressed in several manners, including directly asking the City to reconsider, or appealing the denial of the occupancy permit to the BOA—both of which Plaintiffs did. In other words, Plaintiff's harms could be redressed through accommodations other than a Section 89.110 appeal. Because Defendants could have accommodated Plaintiffs by granting the relief they requested, *Oxford House-C* does not bar Plaintiff's claim as a matter of law. *Cf. also Country Club Estates, L.L.C. v. Town of Loma Linda*, 281 F.3d 723, 724 (8th Cir. 2002) (per curiam)

(reaching the same conclusion as *Oxford House-C* under apparently similar facts); *United States v. Vill. of Palatine, Ill.*, 37 F.3d 1230, 1233 (7th Cir. 1994) (same).[4]

Defendants' motion to dismiss the Amended Complaint on Rule 12(b)(6) grounds is DENIED.

### III. Because the Amended Complaint presents its claims clearly, the Court rejects Defendants' Rule 10(b) motion.

Finally, Defendants move for dismissal under Rule 10(b), which states, "If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Defendants argue that the Amended Complaint is not clear because Plaintiffs make multiple claims under two different counts against two different defendants, yet each Defendant has "separate obligations and duties within the City government" (Doc. 13, at 8–9).

The Amended Complaint specifically notes when either or both Defendants are alleged to have done some act. Because the Amended Complaint is already sufficiently clear, further division of its claims would not "promote clarity." Fed. R. Civ. P. 10(b); *see Burton v. St. Louis Bd. of Police Comm'rs*, No. 4:10cv1540 TCM, 2011 WL 1226984, at *3 (E.D. Mo. Mar. 29, 2011) (rejecting a Rule 10(b) challenge where it was clear when the plaintiff was making allegations against which defendant). Rather, Defendants' objections go to the merits of

---

[4] Defendants cite an Eighth Circuit FHA opinion which states, "The district court granted summary judgment to the City because Sandhill had not exhausted the administrative remedies available under Springfield's municipal code and Sandhill appeals. Having carefully reviewed the record and the parties' briefs, we conclude an extended discussion is not warranted and affirm for the reasons stated in the district court's thorough opinion." *Sandhill, Inc. v. City of Springfield, Mo.*, 221 F.3d 1343 (8th Cir. 2000) (per curiam) (unpublished). For two reasons, this case does not support Defendants' argument that Plaintiffs should have appealed to the Greene County Circuit Court. First, *Sandhill* is essentially a one-paragraph opinion that neither supplies a factual background nor attempts to contextualize the above-quoted statement. Second, *Sandhill* is an unpublished decision issued before 2007, which the Eighth Circuit in its own local rules has admonished is "not precedent [and] generally should not be cited" absent exceptions not applicable here. 8th Cir. R. 32.1A.

Plaintiffs' claims, which is not the appropriate focus of a Rule 10(b) challenge. This part of Defendants' motion is DENIED.

## IV. Because Plaintiffs do not establish the threat of irreparable harm, the court denies their motion for a preliminary injunction.

Plaintiffs move for a preliminary injunction under Federal Rule of Civil Procedure 65(a) to enjoin Defendants "from taking any steps to prevent occupancy by the current residents of the [Property] based on failure to obtain a Certificate of Occupancy or other occupancy permit" (Doc. 5, at 1).

A preliminary injunction serves "to preserve the status quo until, upon final hearing, a court may grant full effective relief." *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir. 1993). Accordingly, in a ruling on a motion for a preliminary injunction, a court may consider "evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The parties here do not dispute any material facts, so the Court rules on the Amended Complaint and the affidavit attached to Plaintiffs' motion. *See United Healthcare Ins. Co. v. Advance PCS*, 316 F.3d 737, 744 (8th Cir. 2002).

In determining whether to grant preliminary injunction under Rule 65(a), the Court considers the so-called "*Dataphase* factors": (1) the threat of irreparable harm to the movant; (2) the balance between this harm and any injury that granting the injunction will inflict on the non-moving party; (3) the likelihood that the moving party will prevail on the merits; and (4) the public interest. *H & R Block Tax Servs. LLC v. Acevedo-Lopez*, 742 F.3d 1074, 1077 (8th Cir. 2014); *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). The district court usually balances all *Dataphase* factors to determine whether they favor granting an injunction, but a movant's complete failure to show the first *Dataphase* factor—irreparable

injury—is "an independently sufficient ground upon which to deny a preliminary injunction." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).  An injunction is an extraordinary remedy and Plaintiffs bear the burden of establishing the need for such relief.  *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006).

Under the first *Dataphase* factor, Plaintiffs must establish that they will suffer irreparable harm.  Irreparable harm is present when legal remedies are inadequate.  *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959).  For an injunction to issue, irreparable harm must be likely to occur.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  If the movant cannot show there has been past irreparable harm, then he must establish "there exists some cognizable danger of recurrent violation."  *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).  Thus, Plaintiffs must show that they face irreparable harm if the Court does not enjoin Defendants from preventing the Property's current residents from occupying the Property.

Plaintiffs fail to make this showing.  Without a preliminary injunction, Plaintiffs must discontinue housing for at least two of the residents at the Property.  The harms of this constructive eviction will be inflicted only on the *residents*, who are not parties to this lawsuit.  Robertson and Recovery Chapel, as the parties seeking an injunction, must show that *they* face irreparable harm.  The only readily identifiable potential harms to Plaintiffs are legal, not equitable—for instance, the "significant money" Plaintiffs invested in the Property to make it habitable and suitable for use as a residential group home (Doc. 7, at 2), and the budgetary shortfall they predict will result from the City's actions.  Thus, these harms can be redressed through an award of damages.

Plaintiffs have failed to carry their heavy burden on this *Dataphase* factor, so the Court need not proceed further. *See Watkins Inc.*, 346 F.3d at 844. The Court declines to issue an injunction, and Plaintiffs' motion is DENIED.

## Conclusion

For the reasons above, Defendants' Motion to Dismiss Amended Complaint (Doc. 12) and Plaintiffs' Motion for Preliminary Injunction (Doc. 5) are each DENIED.

**IT IS SO ORDERED.**

Date:  October 2, 2014      /s/ Greg Kays
                            GREG KAYS, CHIEF JUDGE
                            UNITED STATES DISTRICT COURT